IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL MIVILLE, Individually | : | |
| and as Executor of the Estate of | : | |
| RUTH MIVILLE, deceased, | : | |
| Plaintiff, | : | Civil Action No. |
| v. | : | 03-CV-3523 |
| | : | |
| ABINGTON MEMORIAL | : | |
| HOSPITAL, et al., | : | |
| Defendants. | : | |

**MEMORANDUM & ORDER**

Anita B. Brody, J.                                                                                                   July 18, 2005

  Plaintiff Paul Miville ("Mr. Miville"), executor of the estate of Ruth Miville ("Mrs. Miville"), deceased, brings this medical malpractice suit against defendants Abington Memorial Hospital, Heather Schwartzberg, M.D., Maritza Martinez, M.D., Kimberlee Austin, M.D., Randy Lamberg, M.D. ("Dr. Lamberg"), Anesthesia Associates of Abington, Frank Craparo, M.D., Stephen Smith, M.D., and Abington Perinatal Associates, P.C. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332. Currently before me is the summary judgment motion of defendants Randy Lamberg, M.D., and Anesthesia Associates of Abington (collectively "moving defendants").

**BACKGROUND**

  Mrs. Miville had muscular dystrophy and was wheelchair bound. (Def.'s Mot. at 3; Pl.'s Resp. at 8-9.) Mrs. Miville had a history of "severe restrictive lung disease" and had a history of

1

being difficult to intubate.[1]  (Id.; Def.'s Mot. Ex. B.)  In October of 2001, while Mrs. Miville was pregnant, she developed preeclampsia, a life threatening condition that can develop in pregnant women, and she was admitted to Abington Memorial Hospital on October 8, 2001.  (Def.'s Mot. at 3; Pl.'s Resp. at 8-9.)  In the morning of October 9, 2001, Mrs. Miville complained of having shortness of breath which continued throughout the day.  (Def.'s Mot. Ex. B.)  Mrs. Miville also became more lethargic and less responsive throughout the day.  (Id.)  In the late evening of October 9, 2001, Mrs. Miville's treating physicians determined that she needed an emergency cesarean section.  (Def.'s Mot. at 3; Pl.'s Resp. at 8-9.)  Dr. Lamberg is a board-certified anesthesiologist and was the anesthesiologist on-call for Mrs. Miville's surgery.  (Id.)  While Dr. Lamberg was trying to administer a spinal anesthetic, Mrs. Miville's condition worsened and an emergency tracheotomy was performed.  (Def.'s Mot. at 3; Pl.'s Resp. at 7.)  Mrs. Miville underwent the cesarean section, she gave birth to a son, and she was transferred to the intensive care unit.  (Def.'s Mot. at 3-4; Compl. ¶ 33-41.)  Several days later, Mrs. Miville passed away.  (Id.)

   Plaintiff Mr. Miville presents two experts that criticize the actions of Dr. Lamberg: Dr. Joseph Shumway, an obstetrician (Def.'s Mot. Ex. C (Shumway C.V.)), and Dr. Ian Newmark, who is board-certified in internal medicine, pulmonary disease, and critical care (Newmark Aff. ¶ 2).  Dr. Newmark's criticisms of Dr. Lamberg relate to his failure to intubate and protect Mrs. Miville's airway before attempting anesthesia.  (Newmark Aff. ¶ 7.)  He does not criticize Dr. Lamberg's choice of anesthetic or the manner by which he administered the anesthetic.  (Id.)

---

[1]Intubation is "the introduction of a tube into a hollow organ (as the trachea)." Merriam-Webster Online, at http://www.m-w.com/cgi-bin/dictionary?book=Dictionary&va=intubate.

According to Dr. Newmark, "A basic tenet of all medicine, applicable to all specialties, is to protect and secure an airway in patients experiencing shortness of breath or other pulmonary or respiratory distress/disorder." (Id. ¶ 5.)

Mr. Miville claims that Dr. Lamberg was negligent in failing to intubate Mrs. Miville and in failing to protect Mrs. Miville's airway prior to her spinal anesthesia. (Compl. ¶¶ 54-56.) Mr. Miville also alleges that defendant Anesthesia Associates of Abington is vicariously liable for the actions of Dr. Lamberg. (Id.) In the instant summary judgment motion, moving defendants argue that they are entitled to summary judgment because plaintiff cannot establish a prima facie case of negligence against Dr. Lamberg. (Def.'s Mot. at 3.)

**DISCUSSION**

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." Kornegay v. Cottingham, 120 F.3d 392, 395 (3d Cir. 1997).

Under Pennsylvania law, to state a prima facie case of medical malpractice, a plaintiff must provide a medical expert who will testify as to the applicable standard of care (i.e. the duty) that the physician owed the patient, that the physician breached that standard or duty, and that the breach was the proximate cause of the harm suffered.[2] Hightower-Warren v. Silk, M.D., 698

---

[2]The only exception to the requirement of expert testimony in medical malpractice cases applies where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons. Hightower-Warren,

3

A.2d 52, 54 (Pa. 1997); Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003).  In 2002, the Pennsylvania state legislature enacted the Medical Care Availability and Reduction of Error Act ("MCARE"), 2002 Pa. Laws 13.  Section 512 of MCARE provides:

> **Expert qualifications**
> **(a) General rule.**--No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.
> **(b) Medical testimony.**--An expert testifying on a medical matter, including the standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:
>     (1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.
>     (2) Be engaged in or retired within the previous five years from active clinical practice or teaching.
>     Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.
> **(c) Standard of care.**--In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:
>     (1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.
>     (2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).
>     (3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).
> **(d) Care outside specialty.**--A court may waive the same subspecialty requirement for an expert testifying on the standard of

---

698 A.2d at 54 n.1.  The parties in the instant case do not contend that this exception applies.

> care for the diagnosis or treatment of a condition if the court determines that:
> (1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and
> (2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.
> **(e) Otherwise adequate training, experience and knowledge.**--A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512.

Moving defendants argue that Mr. Miville cannot establish a prima facie case of medical malpractice because, under section 512 of MCARE, none of Mr. Miville's experts are qualified to testify against Dr. Lamberg. (Def.'s Mot. at 5-7.) Dr. Lamberg is a board-certified anesthesiologist. Moving defendants argue that section 512 of MCARE requires that any expert who testifies against a defendant doctor must practice in the same subspecialty as the defendant or in a subspecialty that has a substantially similar standard of care for the specific care at issue. (Def.'s Mot. at 6-7.) Moving defendants also argue that under section 512 "a plaintiff cannot establish a prima facie case of negligence against a board certified defendant without the testimony of an expert who is board certified in the same field as the defendant." (Id. at 5.) Neither of plaintiff's experts who criticize Dr. Lamberg's actions are anesthesiologists or board-certified in anesthesiology. Therefore, according to moving defendants, plaintiff's experts are not qualified to testify against Dr. Lamberg, and, without such a medical expert, Mr. Miville is unable to establish a prima facie case of medical malpractice against Dr. Lamberg. (Id.)

The first step in determining whether Mr. Miville's experts may testify against Dr. Lamberg is to determine whether section 512 of MCARE even applies in the instant case, that is, a federal diversity case. Mr. Miville notes that the admissibility of experts in federal cases is governed by Federal Rule of Evidence ("FRE") 702 and questions the applicability of section 512 of MCARE in the instant case.[3] (Pl.'s Resp. at 2.) However, FRE 601 specifically applies state rules of witness competency to federal diversity cases. FRE 601 provides that "with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law."

In Legg v. Chopra, 286 F.3d 286, 289-92 (6th Cir. 2002), the Sixth Circuit examined a Tennessee state statute requiring medical experts in malpractice cases to be licensed to practice in Tennessee or in a bordering state. The court held that the Tennessee statute was a rule of witness competency and thus applies in federal diversity cases under FRE 601. Id. The court noted, "State witness competency rules are often intimately intertwined with a state substantive rule. This is especially true with medical malpractice statutes, because expert testimony is usually required to establish the standard of care." Id. at 290. The Legg court then held that there was no conflict between the determination of the competency of a medical expert under FRE 601 and a finding on the admissibility of expert testimony under FRE 702. Id. at 291. The Legg court reasoned that while FRE 601 deals with a witness's competency, FRE 702, as interpreted by Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), "is a measure of *qualification*, as it is directed at the science and methodology behind the witness's testimony,

---

[3] Moving defendants fail to address this issue in their motion. Mr. Miville raises this issue in one sentence of his response but fails to present any argument or case law on the issue.

and is therefore a procedural issue." Id. (emphasis in original).  See also McDowell v. Brown, 392 F.3d 1283, 1294-97 (11th Cir. 2004) (quoting extensively from Legg and applying state law in finding a doctor "competent" to testify as an expert witness on the standard of care applicable to nurses).  In plain terms, section 512 of MCARE is a rule of witness competency rather than a rule of expert qualification.  40 P.S. § 1303.512(a) ("General rule.–No person shall be *competent* to offer an expert medical opinion in a medical professional liability action against a physician unless . . .").  Thus, section 512 of MCARE is applied to the instant case under FRE 601 and Mr. Miville's expert witnesses must meet the requirements of section 512 in order to be competent to testify against Dr. Lamberg.[4, 5]

Having determined that section 512 of MCARE does indeed apply in the instant case, I now turn to the argument presented in moving defendant's motion.  Moving defendants argue that Mr. Miville's experts are not competent to testify against Dr. Lamberg because none of them are anesthesiologists as required by sections 512(c)(2) & (3) of MCARE.  I address each of these provisions in turn.

---

[4] FRE 702 also applies to the admissibility of expert testimony in this case. However, the admissibility of Mr. Miville's experts under FRE 702 is not at issue in the instant motion.

[5] Even if FRE 601 did not require the application of section 512 of MCARE in the instant case, section 512 would still be applicable under the principles of Erie R.R. v. Tompkins, 304 U.S. 64 (1938) because section 512 is a state substantive law.  See Chamberlain v. Giampapa, 210 F.3d 154, 158-161 (3d Cir. 2000) (New Jersey statute requiring plaintiff to file an affidavit of merit by a licensed physician within 60 days of defendant's answer in medical malpractice cases is a substantive rule applying in federal diversity cases); In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 750-52 (3d. Cir. 1994) (Pennsylvania's rule that expert testimony on causation in a medical malpractice case is only admissible if expert testifies to a reasonable degree of medical certainty is a substantive rule applying to federal diversity cases).

Section 512(c)(2)

Section 512(c)(2) requires that testifying expert must "[p]ractice in the same subspecialty as the defendant physician." 40 P.S. § 1303.512(c)(2). However, section 512(c)(2)'s same subspecialty requirement is not absolute. A testifying expert fulfills the requirements of section 512(c)(2) is he or she practices "in a subspecialty which has a substantially similar standard of care for the specific care at issue." 40 P.S. § 1303.512(c)(2).[6] As permitted by the statute, Pennsylvania courts have not applied the same subspecialty requirement of MCARE in absolute terms. In Gartland v. Rosenthal, 850 A.2d 671 (Pa. Super. 2004), the Pennsylvania Superior Court overturned the lower court's finding at the summary judgment stage that a neurologist was not qualified to testify as to the standard of care of a radiologist in reading images of the brain. 850 A.2d at 675. The court noted that defendant did not produce any evidence to refute the neurologist's qualification to read the images in question. Id. While the court probably would not have found the neurologist qualified to testify against the radiologist if the radiologist were reading x-rays of a leg, a neurologist's opinion on x-rays relating to neurological problems and the standard of care for radiologists reading such x-rays should have been allowed. Id. See also Campbell v. Attanasio, 862 A.2d 1282,1289 (Pa. Super. 2004) (finding that a psychiatrist could testify against a general internist when the standard of care for the specific care at issue was within the expertise of the psychiatrist and the standard of care was the same for all physicians across all specialties); Herbert v. Parkview Hospital, 854 A.2d 1285, 1291-94 (Pa. Super. 2004) (finding that plaintiff's expert, who was certified in internal medicine, was qualified to testify

---

[6]Additionally, the court can waive section 512(c)(2)'s same subspecialty requirement under sections 512(d) & (e). 40 P.S. §§ 1303.512(c)-(e). Because Dr. Newmark meets the requirements of section 512(c)(2) itself, there is no need to examine these waiver provisions.

against defendant, a nephrologist who also had training in internal medicine, when the specific care at issue was within the field of internal medicine).

In the instant case, Mr. Miville presents evidence that the specific care at issue is the failure of Dr. Lamberg to secure Mrs. Miville's airway before administering an anesthetic and not Dr. Lamberg's choice of anesthetic or his administration of the anesthetic. (Newmark Aff. ¶ 7.) Mr. Miville also presents unrebutted evidence that the standard of care governing the specific care at issue is the same across all specialties and that Dr. Newmark has knowledge of the applicable standard of care. (Newmark Aff. ¶ 5-6.) Thus, the specific care at issue is not an issue unique to anesthesiology, Dr. Lamberg's area of specialty. Although moving defendants state in their motion that the case against Dr. Lamberg concerns the decisions that he made in his role as a treating anesthesiologist (Def.'s Mot. at 4), they fail to present any evidence that the specific care at issue is solely within and specific to the field of anesthesiology. Moving defendants fail to present any evidence that the standard of care for the specific care at issue is different from one specialty to another. Moving defendants also fail to present any evidence that Dr. Newmark is not qualified under section 512(c)(2) to testify as to the standard of care for the specific care at issue.

Therefore, the uncontested evidence is that Mr. Miville's expert, Dr. Newmark, meets the requirements of section 512(c)(2) of MCARE. Because the standard of care for the specific care at issue is the same across all specialties, Dr. Newmark practices "in a subspecialty which has a substantially similar standard of care for the specific care at issue." 40 P.S. § 1303.512(c)(2).[7]

---

[7]Although Mr. Miville presents two experts, Dr. Shumway and Dr. Newmark, who criticize the actions of defendant Dr. Lamberg, Mr. Miville's arguments focus only on the qualifications of Dr. Newmark. However, because Mr. Miville presents unrebutted evidence that

Section 512(c)(3)

Under section 512(c)(3) of MCARE, if the defendant physician is board certified, then the testifying expert must also be board certified by the same board.  40 P.S. § 1303.512(c)(3).  Unlike section 512(c)(2) which focuses on the "specific care at issue," section 512(c)(3)'s same board-certification requirement is much more absolute.  Section 512(c)(3) reads, "In the event the defendant physician is certified by an approved board, [the expert must] be board certified by the same or a similar approved board except as provided in subsection(e)."  40 P.S. § 1303.512(c)(3).  Thus, section 512(c)(3)'s same board-certification requirement can only be waived under section 512(e) for experts who have been actively involved in or who have taught full-time in the applicable subspecialty or related field of medicine within the previous five years.  40 P.S. § 1303.512(e).[8]  The Pennsylvania appellate courts have not, as yet, been heard on section 512(c)(3).

Dr. Lamberg is certified by the American Board of Anesthesiologists.  (Lamberg C.V.)

---

the standard of care for the specific care at issue is the same across all specialties, Dr. Shumway, an obstetrician, also meets the requirements of section 512(c)(2).

[8]The reasoning of Gartland, 850 A.2d 671, Campbell, 862 A.2d 1282, and Herbert, 854 A.2d 1285, cited in the previous section, support the finding that Mr. Miville's experts meet the requirements of section 512(c)(2) of MCARE.  However, they cannot be used to support a finding that Mr. Miville's experts meet the requirements of section 512(c)(3).  In Campbell, the court found that the same board-certification requirement did not apply because the defendant physician, who was board-certified in internal medicine at the time of trial, was not board-certified in internal medicine at the time of the incident at issue occurred.  862 A.2d at 1289.  Therefore, there was no need for the testifying expert to be board-certified in internal medicine.  Id.  In Herbert, the defendant physician was board-certified in both internal medicine and nephrology (a sub-specialty of internal medicine).  854 A.2d at 1294.  Therefore, the testifying expert, who was board certified in internal medicine, was qualified to testify against the defendant nephrologist.  Id.  In Gartland, the court did not distinguish between section 512(c)(2) and 512(c)(3).  850 A.2d at 674-676.  Therefore, the reasoning of the court cannot be used to contravene the plain language of the statute.

Neither of Mr. Miville's experts who criticize Dr. Lamberg are certified by the American Board of Anesthesiologists. Dr. Newmark is certified by the American Board of Internal Medicine (with additional certifications in the internal medicine subspecialties of pulmonary diseases and critical care) and the American Board of Forensic Medicine. (Newmark C.V.) Dr. Shumway is certified by the America Board of Obstetrics and Gynecology. (Shumway C.V.) Mr. Miville fails to present any evidence that the American Boards of Internal Medicine, Forensic Medicine, or Obstetrics and Gynecology are "similar to" the American Board of Anesthesiologists. Mr. Miville also fails to present any evidence that either Dr. Newmark or Dr. Shumway have been actively involved in or taught full-time in the field of anesthesiology within the previous five years. Therefore, from the plain meaning of the provision of the statute, Mr. Miville's experts fail to meet the requirements of section 512(c)(3) of MCARE and are not competent to testify against defendant Dr. Lamberg.

**CONCLUSION**

For the reasons stated above, Mr. Miville's experts, Dr. Newmark and Dr. Shumway, do not meet the requirements of section 512 of MCARE and, therefore, are not competent to testify against defendant Dr. Lamberg. Rather than immediately granting moving defendants' summary judgment motion, I will allow Mr. Miville until August 18, 2005 to obtain an expert who is competent to testify against Dr. Lamberg.[9] To preclude summary judgment, on or before August 18, 2005, Mr. Miville must file with the court notice of hiring an expert who is a board-certified

---

[9]This additional time is to allow Mr. Miville to obtain an expert to testify against Dr. Lamberg only. Discovery as to all other issues remains closed.
11

anesthesiologist and file a copy of the expert's C.V. with the court.  If Mr. Miville files such notice by August 18, 2005, moving defendants will be given an opportunity to conduct any rebuttal discovery necessary.

**ORDER**

**AND NOW**, this 18th day of July 2005, it is **ORDERED** that on or before **August 18, 2005**, plaintiff Mr. Miville shall file a notice with the court that he has obtained an expert to testify against defendant Dr. Lamberg, attaching a copy of the expert's C.V. If plaintiff files the required papers on or before August 18, 2005, the summary judgment motion of defendants Dr. Lamberg and Anesthesia Associates of Abington will be denied. If plaintiff fails to file the required papers by August 18, 2005, summary judgment as to Dr. Lamberg and Anesthesia Associates of Abington will be granted.

It is **FURTHER ORDERED** that, if plaintiff does file the required papers by August 18, 2005, then:

- Plaintiff's expert report shall be due on **August 31, 2005**;
- Defendants' rebuttal reports, if any, shall be due on **September 15, 2005**;
- Any depositions shall be completed by **September 30, 2005**; and
- The trial date of **October 5, 2005** shall remain the same.

S/Anita B. Brody

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:      Copies **MAILED** on _____ to:

O:\ABB\Miville-sjm.wpd